UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                           :

UNITED STATES OF AMERICA                :

                                                  :

              -v-                      :             13 Cr. 362 (JPC)

                                                    :

KEVIN TILLMAN,                       :          OPINION AND ORDER

                                                      :

                                Defendant.           :

                                                      :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      In April 2013, Defendant Kevin Tillman joined a plot to rob a drug dealer of roughly twenty-two kilograms of narcotics. His intended victim, however, did not in fact exist. Instead, the victim was a creation of the Drug Enforcement Administration as part of a sting operation. Tillman was arrested on May 1, 2013, after he and his associates arrived, heavily armed, at the location where they expected to find their victim. Later that year, Tillman pled guilty to conspiring to committing a Hobbs Act robbery and, on March 28, 2014, he was sentenced to a 151-month term of imprisonment.

      Now almost a decade into that sentence, Tillman seeks compassionate release from prison due to intervening case law that would have yielded a lower advisory range under the United States Sentencing Guidelines were he sentenced today. For the reasons that follow, the Court finds that Tillman has failed to show "extraordinary and compelling reasons" to warrant modification of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). And even if Tillman had made that showing, several factors under 18 U.S.C. § 3553(a) independently weigh heavily against his early release from prison. The Court therefore denies Tillman's motion for compassionate release.

## I.  Background

In early Spring 2013, an individual who was proffering with the Government (the "CW") informed law enforcement that Tillman's Co-Defendant, Christopher Rollins, had committed armed robberies of drug dealers.  Dkt. 35 ("PSR") ¶ 15.  Law enforcement then put in motion a sting operation targeting Rollins.  On April 4, 2013, at the direction of law enforcement, the CW met with Rollins and discussed robbing a purported multi-kilogram shipment of narcotics that was arriving in New York City from Miami.  *Id.*  Rollins soon recruited Tillman and Co-Defendant Craig McPherson to participate in the plot.  *Id.* ¶¶ 16-18.  At meetings to coordinate the robbery, the CW told Rollins and Tillman that their victim would have fourteen kilograms of heroin and eight kilograms of cocaine, and Rollins assured the CW that he had obtained multiple firearms for the men to use.  *Id.* ¶ 17.  On the night of May 1, 2013, the day the supposed shipment was to arrive in New York, Rollins drove Tillman and McPherson to the location where they expected to find their victim and rob him of the drugs.  *Id.* ¶¶ 18-19.  Instead, upon their arrival, law enforcement arrested Tillman, Rollins, and McPherson.  *Id.* ¶¶ 19-20.  Recovered from Rollins's vehicle were three guns—a loaded Taurus .357 magnum revolver, a loaded Ruger .357 magnum revolver, and a loaded Mac-11 9-millimeter pistol—along with zip ties, wigs, and a box of ammunition.  *Id.* ¶ 20.  All three loaded firearms were in a bag located near where Tillman had been sitting.  *Id.*

On December 16, 2013, Tillman pleaded guilty to a conspiracy to commit a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951, pursuant to a plea agreement.  *Id.* ¶¶ 2, 8; Minute Entry for Dec. 16, 2013.  As part of his plea agreement, Rollins and the Government agreed to an offense level of 29 with a Criminal History Category of VI under the

United States Sentencing Guidelines.  PSR ¶ 8.  That resulted in an advisory Guidelines range of 151 to 188 months' imprisonment.  *Id.*

At sentencing, the Honorable William H. Pauley III arrived at the same Guidelines range, which entailed applying the "career offender" provisions of U.S.S.G. §§ 4B1.1 and 4B1.2.  Dkt. 45 ("Sentencing Tr.") at 6-7.  This career offender determination relied, in part, on Tillman's Hobbs Act conspiracy conviction qualifying as a "crime of violence."  *See* U.S.S.G. §§ 4B1.1(a), 4B1.2(a).  In addition to treating Tillman as a career offender for purposes of the Guidelines, Judge Pauley noted Tillman's troubling criminal history, which consists of eight other convictions dating back to 1996, including multiple convictions related to the manufacture and distribution of controlled substances and one for resisting arrest.  Sentencing Tr. at 7; PSR ¶¶ 37-55.  Citing the relevant section 3553(a) factors, Judge Pauley determined that a lengthy sentence was appropriate because of the severity of the crime and the need for deterrence.  Sentencing Tr. at 7-8.  Judge Pauley explained that "prison terms of several years have not deterred [Tillman] from further criminal conduct," making "a lengthy sentence" necessary.  *Id.* at 8.  Judge Pauley then sentenced Tillman to 151 months in prison and three years of supervised release.  *Id*.  Assuming his receipt of good conduct time credit toward his sentence, Tillman's projected release date is January 21, 2024.  *See* Find an Inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 20, 2023); Dkt. 117 ("Opposition") at 3.  Tillman is currently housed at the Federal Correctional Institution Beckley in Beaver, West Virginia ("FCI Beckley").  Opposition at 3.  This case was reassigned to the undersigned on August 13, 2021.  Dkt. 101.

In March 2022, Tillman submitted an administrative request to the Bureau of Prisons ("BOP") seeking a sentence reduction.  Dkt. 109 at 3; Opposition at 3.  Tillman claims that, later that month, the BOP denied his request.  Dkt. 109 at 3.

Roughly two months later, Tillman, proceeding *pro se*, moved for compassionate release. Dkts. 109, 110.  Tillman argues that because his Sentencing Guidelines range reflected a career offender enhancement that incorrectly presumed that his Hobbs Act conspiracy conviction qualified as a "crime of violence" under U.S.S.G. § 4B1.2(a), extraordinary and compelling reasons justify a reduction of his sentence to time served.  Dkt. 110 ("Motion")*.* at 6-7.  Following Tillman's motion and the Government's opposition, the Second Circuit held that a conspiracy to commit a Hobbs Act robbery does not qualify as a crime of violence under section 4B1.2(a). *United States v. Chappelle*, 41 F.4th 102, 112 (2d Cir. 2022).   This Court then ordered supplemental briefing on the extent to which *Chappelle* impacts the analysis of Tillman's motion. Dkt. 118.  The Government continues to oppose Tillman's request for compassionate release, arguing that Tillman "has failed to demonstrate extraordinary and compelling reasons warranting a reduction in his sentence and . . . even if he did establish extraordinary and compelling reasons, a reduction in sentence is not appropriate based on the 18 U.S.C. § 3553(a) . . . factors."  Dkt. 119 ("Supplemental Opposition") at 1.

## II.  Legal Standard

A defendant may seek compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See also United States v. Newton*, No. 18 Cr. 373 (RJS), 2021 WL 321847, at *2 (S.D.N.Y. Feb. 1, 2021) ("The Court may not modify a term of imprisonment once it has been imposed except pursuant to statute." (internal quotation marks omitted)).  The statute provides, in relevant part, that upon motion of a defendant, the court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction."

18 U.S.C. § 3582(c)(1)(A)(i).[1]  Thus, district courts face two questions in addressing the merits of

such compassionate release motions: (1) whether extraordinary and compelling reasons merit

reducing the sentence and (2) how the section 3553(a) factors weigh.  *United States v. Bennett*,

No. 15 Cr. 95 (JPC), 2022 WL 3445349, at *2 (S.D.N.Y. Aug. 17, 2022).   In doing so, the

Sentencing Commission's policy statement at section 1B1.13 of the Guidelines Manual no longer

limits district courts.  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  Instead, courts

may "consider the full slate of extraordinary and compelling reasons that an imprisoned person

might bring before them in motions for compassionate release."  *Id.*  As the moving party, Tillman

bears the burden of establishing his entitlement to early release.  *See, e.g.*, *United States v. Butler*,

970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has

the burden of showing that the circumstances warrant that decrease."); *United States v. Phillibert*,

557 F. Supp. 3d 456, 458 (S.D.N.Y. 2021).

### III.  Discussion

#### A.  Extraordinary and Compelling Reasons

Tillman requests "time served, [immediate] release."  Motion at 7.  His primary argument

is that his sentence was based on a Guidelines range that treated him as a career offender, yet his

Hobbs Act conspiracy conviction in this case did not qualify as a required crime of violence.  *Id.*

at 6-7.  Were he to be sentenced today, he argues, his Guidelines range would have been 84 to 105

months, rather than the 151 to 188 range that Judge Pauley determined at sentencing and, with that

lower range, he would have received a lower sentence.  *Id.*  Tillman also presents other factors

---

[1] Section 3581(c)(1)(A) also provides that a motion for compassionate release cannot be brought until after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The Government has not argued that Tillman has failed to exhaust.

that, he argues, weigh in favor of his release including his rehabilitation, *id.* at 8-9, a plan to transition back into the community, *id.* at 9, his participation in prison programs, *id.*, and his compliance with disciplinary rules while incarcerated, *id.*

A defendant is a "career offender" subject to a possible Guidelines offense level and criminal history increase if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a); *see id.* § 4B1.2(a) (defining "crime of violence").  As noted, subsequent to Tillman's motion, the Second Circuit held in *Chappelle* that conspiracy to commit Hobbs Act robbery—the offense of conviction in this case—does not qualify as a crime of violence under the Guidelines.  *Chappelle*, 41 F.4th at 112.  Therefore, as the Government acknowledges, "if the defendant had been sentenced under current law, then he would not have qualified as a career offender and his Guidelines range would have been lower."  Supplemental Opposition at 1.

Intervening case law, or a change in statutory law, that results in a lower advisory Guidelines range if an incarcerated defendant were sentenced in the present day does not in and of itself constitute extraordinary and compelling reasons under section 3582(c)(1)(A)(i).  *See Speed v. United States*, No. 04 Cr. 336 (PKC), 2021 WL 1085360, at *2-4 (S.D.N.Y. Mar. 22, 2021) (stating that the court would deny the defendant's motion for compassionate release where the defendant's Guidelines recommendation would have been lower "had he been sentenced today due to adjusted criteria to qualify as a 'Career Offender'")[2]; *United States v. Fiseku*, No. 15 Cr. 384

---

[2] In *Speed*, the Honorable P. Kevin Castel held that he lacked jurisdiction to resolve a motion for a sentence reduction on account of the movant's pending appeal of a denial of habeas

(PAE), 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (denying a motion for compassionate release regardless of whether a change in career offender classification would be appropriate in the present day because the defendant's sentence did not turn on the Guidelines range); *Musa v. United States*, 502 F. Supp. 3d 803, 812 (S.D.N.Y. 2020) (explaining that a statutory change which would have led to a lower Guidelines range had it been in effect at the time of the defendant's sentencing was factor weighing in favor of compassionate release but alone not sufficient to grant it).  The Court can consider, however, the intervening caselaw as a factor in assessing whether extraordinary and compelling reasons exist.  *See Musa*, 502 F. Supp. 3d at 812.  Therefore, the Court weighs the impact of *Chappelle*, along with the other considerations cited by Tillman.

Liberally construed, Tillman's motion presents additional considerations including the COVID-19 pandemic, his efforts to rehabilitate while incarcerated, and his future plans upon release from prison.  These factors, combined along with the aforementioned intervening caselaw, fall short of extraordinary and compelling reasons warranting his early release.

First, Tillman highlights the presence of COVID-19 in the federal prison system.  Motion at 5.  Multiple courts have concluded that "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."  *United States v. Serrano,* No. 15 Cr. 608 (KPF), 2022 WL 1443688, at *14 (S.D.N.Y. May 6, 2022) (quoting *United States v. Nwankwo*, No. 12 Cr. 31 (VM),

---

relief pursuant to 28 U.S.C. § 2255.  *Speed*, 2021 WL 1085360, at *1.  Judge Castel explained, relying on Federal Rule of Criminal Procedure 37(a)(3), that he would deny the sentence reduction motion and the reasons why, in the event that jurisdiction were restored to him.  *Id.*; *see* Fed. R. Crim. P. 37(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.").

2020 WL 2490044, at *1 (S.D.N.Y. May 14, 2020)); *United States v. Thomas*, No. 15 Cr. 667 (KPF), 2020 WL 6364677, at *4 (S.D.N.Y. Oct. 29, 2020).   Tillman has failed to identify additional factors warranting compassionate release.   He does not claim to suffer from any underlying medical conditions that would place him at a greater risk of serious illness were he to contract COVID-19.  *See* Motion at 5.  Nor does he allege any particularly dangerous conditions at FCI Beckley.  *See id.*  The existence of COVID-19 therefore does not weigh in favor of Tillman's release.

Second, Tillman insists that he has been rehabilitated while incarcerated, citing his participation in prison programs, his receipt of a GED, his future hope to own a cleaning service, and his changed mindset.   *Id.* at 8.   He also maintains that he has received no disciplinary infractions throughout his incarceration and has completed the BOP's Residential Drug Abuse Program ("RDAP") at FCI Beckley.   *Id.* at 9; Dkt. 122.   While the Court may not grant compassionate release solely based on a defendant's rehabilitation, *see* 28 U.S.C. § 994(t), it can consider rehabilitation as relevant to the question of whether extraordinary and compelling reasons merit a sentencing reduction.   *See United States v. Torres*, 464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020).   Tillman further states that he has a plan for his "transition back into the community" by living with his girlfriend and their two children and relying on the support of his family.   Motion at 9.  While the Court commends Tillman for apparently participating in positive prison programs, obtaining a GED, and maintaining a clean disciplinary record, as well as for his plans to transition back to society, the Court does not find this progress and future plans to constitute extraordinary and compelling reasons meriting release even in conjunction with the previously discussed intervening case law.  *See United States v. Steele*, No. 15 Cr. 836 (VM), 2022 WL 2437904, at *2 (S.D.N.Y. July 5, 2022) ("The Court commends [the defendant's] rehabilitative efforts but finds

that these efforts do not, either alone or in combination with the other circumstances he cites, meet the 'extraordinary and compelling' standard.").

In sum, the Court has considered all the reasons mentioned above and any others that Tillman raises in passing in his motion, both individually and collectively, and finds that no extraordinary or compelling reason justifies releasing him from prison.

## B.  Section 3553(a) Sentencing Considerations

Even if Tillman had shown "extraordinary and compelling reasons" for compassionate release, the Court would still deny his motion because the section 3553(a) factors weigh heavily against his early release from prison.  The following section 3553(a) factors in particular warrant keeping Tillman's sentence of imprisonment intact: (1) "the nature and circumstances of the offense," (2) the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (3) the need "to afford adequate deterrence to criminal conduct," and (4) the need "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(1), (2)(A)-(C).

The Court starts with the nature and circumstances of Tillman's offense, as well as the need for the sentence to reflect the seriousness of that offense and provide just punishment.  Without question, this was an extremely serious and dangerous offense.  Tillman was ready and willing to execute an armed robbery of another person.  As Judge Pauley explained at sentencing, Tillman committed "a serious crime of violence in which a number of firearms were in the possession of him and his co-conspirators."  Sentencing Tr. at 7.  Judge Pauley also aptly described Tillman and his co-conspirators as "armed to the teeth," and correctly noted that it was "fortunate . . . that no one was injured or killed as a result of [their] conduct."  *Id.* at 7-8.  Indeed, when Tillman and his criminal associates arrived at the location where they planned to commit the armed robbery, next

to Tillman in the car was a bag with a loaded Taurus .357 magnum revolver, a loaded Ruger .357 magnum revolver, and a loaded Mac-11 9-millimeter pistol.  PSR ¶ 20.  Also in that vehicle were a box of ammunition, zip ties, and wigs.  *Id.*  They clearly were prepared to pull off an extremely violent robbery.  In fact, when Rollins and Tillman met with the CW two days before the planned robbery, Rollins commented that he and his associates were considering just walking up to their intended victim and shooting him on sight.  *Id.* ¶ 17.  This is exceedingly serious and dangerous conduct that demands a lengthy sentence.

The need for the sentence to achieve deterrence, promote respect for the law, and protect society from further crimes committed by Tillman also weigh heavily in favor of the sentence Judge Pauley imposed.  Judge Pauley emphasized Tillman's past criminal conduct, explaining that "a lengthy sentence" was required "given the severity of the offense and the need for deterrence," as prior "prison terms of several years have not deterred [Tillman] from further criminal conduct." Sentencing Tr. at 8.  That criminal history includes six convictions for possessing, distributing, or manufacturing a controlled substance, including drug offenses that occurred in the vicinity of schools, as well as convictions for receipt of stolen property and resisting arrest.  PSR ¶¶ 37-55; *see also* Sentencing Tr. at 7 ("This is the defendant's ninth criminal conviction.  He has amassed a significant criminal history over the years, primarily with controlled substances and selling them near schools, resisting arrest.").  Prior shorter terms of imprisonment clearly had little effect on deterring Tillman from engaging in additional—and extremely dangerous—criminal conduct or convincing him to have respect for the law.  In fact, his criminal activity only evolved to greater violence when he joined the armed robbery plot.

Given Judge Pauley's careful consideration at sentencing of the relevant section 3553(a) factors that demanded a significant period of incarceration for Tillman, particularly the severity of

Tillman's offense and his considerable criminal history, the undersigned is hardly convinced that Judge Pauley would have imposed a lower sentence even if a lower advisory Guidelines range had applied. *Cf. Fiseku*, 2020 WL 7695708, at *4 (denying motion for compassionate release regardless of change in law to classification as a career offender when sentence imposed would not have been altered by a change to the Guidelines range); *see also Chappelle*, 41 F.4th at 112 ("[W]e recognize that the district court would have had broad discretion to impose a sentence above the advisory Guidelines range, had it determined that the suggested range did not fully capture the severity of the crime."). Nor does the undersigned conclude that a lower sentence is warranted for Tillman even after considering the lower Guidelines range that would apply to his conduct today. The Guidelines are, of course, but one of the factors that a Court must consider when imposing sentence; several other section 3553(a) factors counsel strongly in favor of keeping Tillman's sentence intact. Anything less would undermine the important interests that Judge Pauley properly recognized at sentencing.

## IV.  Conclusion

For the above reasons, the Court denies Tillman's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 109 and to mail a copy of this Opinion and Order to Tillman.

SO ORDERED.

Dated: January 22, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge